## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA
## TUCSON DIVISION

JASON ADAM JENSEN,
pro se Plaintiff,

v.

STATE OF ARIZONA;
ADMINISTRATIVE OFFICE OF THE UNITED
STATES COURTS;
ATTORNEY GENERAL PAMELA JO BONDI, in
her official capacity;
CITY OF TUCSON UNIFIED SCHOOL
DISTRICT;
STATE OF MISSOURI;
OFFICE OF CHIEF DISCIPLINARY COUNSEL
(MISSOURI);
MICHAEL STANFIELD;
BEN STRINGER;
STRINGER LAW LLC;
STONE COUNTY, MISSOURI;
STONE COUNTY JAIL STAFF JOHN DOES;
WESLEY WEBER;
PRESIDING JUDGE DAVID COLE;
JOSEPH S. PASSANISE;
JUDGE MATT SELBY;
JUDGE CHAVEZ;
JOHN JENSEN;
MARY JENSEN;
JANE LAURA DOE (Dispatcher, Stone County
Emergency Services);
DEPUTY SCOTT BURDG (Stone County
Sheriff's Office);
CHERYL LANGDON;
KIMBERLING CITY, MISSOURI;
ARIZONA DEPARTMENT OF ECONOMIC
SECURITY / DIVISION OF DEVELOPMENTAL
DISABILITIES;
AMERICAN PSYCHIATRIC ASSOCIATION;

Case No. CV-25-00238-TUC-JGZ



FILED _____ LODGED
_____ RECEIVED _____ COPY

SEP 23 2025

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

and JOHN DOE OFFICERS/EMPLOYEES;
and JOHN DOE DEFENDANTS 1-10,
Defendants.

# AMENDED COMPLAINT AND DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Jason Adam Jensen, appearing pro se, files this Amended Complaint for declaratory and injunctive relief to address systemic violations of constitutional rights and foundational principles of a representative republic by the Defendants.

## I. INTRODUCTION AND NATURE OF THE ACTION

1. This action challenges a concerted and systemic failure by state and federal government entities to uphold the foundational principles of a representative republic as guaranteed by the United States Constitution. Plaintiff alleges that a series of legislative, judicial, and executive actions, taken together, have created a system that denies citizens access to justice, promotes unconstitutional expansions of power, and subverts the will of the people.

2. Specifically, this complaint asserts that the State of Arizona's mental health laws, the U.S. Court Administration's fee structure for electronic records, and a recent Executive Order's promotion of civil commitment have collectively created a zone of government power that operates without adequate oversight and directly infringes upon the fundamental rights of mentally ill and disabled individuals.

3. This complaint further alleges that the state and federal government systematically fail to

enforce the Americans with Disabilities Act (ADA), thereby placing an undue burden on Mentally Ill and Disabled individuals. These individuals, possessing the least ability, focus, money/resources, and public allegiance, are consequently denied effective cooperation and access to necessary accommodations. As a direct result of this systemic non-enforcement, the ADA remains functionally underdeveloped, compelling Plaintiff to bring specific legal actions, including *Jason Adam Jensen v. State of Arizona, et al., Case No. Cv-25-00464-TUC-JGZ*, and Jason Adam Jensen v.SealedDefendants , Case No. CV-25-00434-JGZ. These cases serve as direct and demonstrable proof of the ADA's ineffectiveness and the schemes to force individuals into servitude by way of mental health policies and practices. This systemic failure is exacerbated by state civil commitment laws that permit individuals to be committed if deemed 'dangerous to self or others' or 'incapable of self-care' (e.g., Nevada Revised Statutes 433A.147-197, Alabama Code § 22-52-10.4, Alaska Statutes § 47.30.915(7)). The determination of 'incapable of self-care' is often left entirely to the subjective discretion of state agents, including law enforcement and healthcare providers, who assess observable behavior and perceived risk, leading to subjective and potentially discriminatory judgments that can initiate involuntary holds and commitment proceedings \cite{1.1, 1.2, 1.4, 1.7, 2.1, 2.5}. The specific facts from these cases are cited herein as illustrative examples of the systemic failures and harms caused by the Defendants' policies and inactions challenged in this complaint.

4. The systemic failures of the ADA are further exemplified by *Case No. CV-25-00464-TUC-JGZ*, which demonstrates how Autism is systematically made illegal. While the Executive Order seeks to remove homeless individuals from the streets, Plaintiff, as an autistic individual requiring structure, was made homeless by a "mental health" and "fear" exception to Arizona Tenancy laws by his landlord, Sigrid Schickling.

This demonstrates that not only did the law fail to protect Plaintiff, but the ADA did not even provide equivalent protections. Even after calling 911 and being transported by ambulance to a hospital, Plaintiff was discharged without receiving any sleep because he was not deemed "dangerous to self/others," and the determination of "incapable of self-care" was left to the subjective discretion of others. As detailed in the aforementioned case, Plaintiff was systematically removed from every place he sought refuge for being in a state of mental burnout, yet no assistance was afforded, illustrating how mental health is effectively criminalized. This renders mental health support impossible for the patient to plan, as help, when sought, is consistently denied, thereby alerting others to how to sabotage individuals like Jensen, whose autistic needs are shared by many. Conversely, when Plaintiff does not require assistance, the system frequently intervenes, taking his clothes and phone, and incorrectly labeling him (e.g., bipolar or schizophrenic, which can be diagnosed in minutes by leveraging a meltdown state) rather than providing an accurate autism diagnosis (which requires weeks). This lack of patient-directed support, or support dictated by others, causes the criminality of mental health, isolates criminal allegations to specific moments of alleged crime, and perpetuates homelessness as it becomes harder and harder for mentally ill to obtain and retain a living arrangement. Thus, the Executive Order's assertion that the solution is to force mentally ill individuals off the streets fundamentally ignores the systemic failures that force them into homelessness in the first place. Furthermore, these state mental health laws, exemplified by Florida's Baker Act and Missouri's mental health statutes, operate akin to martial law for the mentally ill, as acknowledged in *Luther v. Borden, 48 U.S. 1 (1849)* regarding the permissible inquiry into martial law's consistency with the Guarantee Clause. These laws allow non-medical personnel, such as police officers with

minimal training (e.g., a 40-hour course), to detain individuals for evaluation and treatment an unlimited number of times. The legal case levied against the detained person is then typically closed as soon as the hospital discharges the individual, effectively removing lawyer protections, all of which usually occurs before the detainee ever speaks to legal counsel.

## II. PARTIES

5.  Plaintiff, Jason Adam Jensen, is a private citizen residing in Tucson, Arizona, proceeding pro se. Plaintiff is an individual with a disability, specifically Autism Spectrum Disorder, which substantially limits one or more major life activities.

6.  Defendant, the State of Arizona, is a sovereign state and public entity responsible for establishing and enforcing statewide policies and procedures, including those related to disability accommodations and mental health services.

    ○ Address for Service: Arizona Governor's Office: 1700 W Washington St, Phoenix, AZ 85007 (As per FRCP, service on a state is typically made on the chief executive officer, the Governor, or by serving the state's attorney general.)

7.  Defendant, the Administrative Office of the United States Courts, is an entity of the United States government responsible for the administrative functions of the federal judiciary, including the maintenance and operation of the Public Access to Court Electronic Records (PACER) system.

    ○ Address for Service: One Columbus Circle, NE, Washington, DC 20544

8.  Defendant, Attorney General Pamela Jo Bondi, is the Attorney General of the United States, sued in her official capacity. This complaint alleges claims against Attorney General Pamela Jo Bondi for both her past actions during her tenure as Attorney General

of Florida, specifically her alleged failure to enforce disability rights protections in

accordance with the ADA and federal supremacy doctrine, and her current

responsibilities as United States Attorney General regarding the enforcement of federal

law, including the ADA and the Executive Order challenged herein.

- o   Address for Service: U.S. Department of Justice, 950 Pennsylvania Avenue NW,

    Washington DC 20530

9.  Defendant, the City of Tucson Unified School District, is a local government entity and

    public school system.

- o   Address for Service: 1010 E 10th St, Tucson, AZ 85719-5813

10. Defendant, the State of Missouri, is a sovereign state within the United States,

    responsible for its own mental health statutes and disciplinary oversight of legal

    professionals.

- o   Address for Service: Missouri Governor's Office: 201 W Capitol Ave, Jefferson City,

    MO 65101 (As per FRCP, service on a state is typically made on the chief executive

    officer, the Governor, or by serving the state's attorney general.)

11. Defendant, Office of Chief Disciplinary Counsel (Missouri), is an entity appointed by the

    Supreme Court of Missouri to investigate allegations of professional misconduct by

    attorneys in Missouri.

- o   Address for Service: 3327 American Avenue, Jefferson City, MO 65109

12. Defendant, Michael Stanfield, is an attorney licensed to practice in Missouri, who

    represented Plaintiff in *Missouri v. Jensen, Case #24SN-CRO0843.*

- o   Address for Service: Stanfield Law LLC, 1720 N. Robberson Ave, Springfield, MO

    65803

13. Defendant, Ben Stringer, is an attorney and principal of Stringer Law LLC, who was

associated with Michael Stanfield in representing Plaintiff.

- o   Address for Service: Stringer Law LLC, 1720 N. Robberson, Springfield, MO 65803

14. Defendant, Stringer Law LLC, is a legal entity operating in Missouri.

- o   Address for Service: 1720 N. Robberson, Springfield, MO 65803

15. Defendant, Stone County, Missouri, is a county within the State of Missouri, responsible for the operation of its Circuit Court, Sheriff's Office, and other county services, including those related to mental health and emergency services.

- o   Address for Service: 105 Stonebridge Pkwy, Branson West, MO 65616

16. Defendant, Stone County Jail Staff John Does, are unidentified individuals employed by or acting under the authority of Stone County Jail, responsible for the care and custody of detainees, including medical and accommodation needs.

- o   Address for Service: Service would typically be made via Stone County Sheriff's Office: 110 South Maple, Galena, MO 65656.

17. Defendant, Wesley Weber, is the Prosecuting Attorney for Stone County, Missouri, involved in the legal proceedings and bond conditions related to Plaintiff's case in Missouri.

- o   Address for Service: Stone County Prosecutor's Office, 110 South Maple Street, Galena, MO 65656

18. Defendant, Presiding Judge David Cole, is a Circuit Court Judge in Stone County, Missouri, involved in Plaintiff's legal proceedings and ADA grievances, including those related to *Case No. 24SN-CR00843* and *24SN-CR00715.*

- o   Address for Service: 110 South Maple, Galena, MO 65656

19. Defendant, Joseph S. Passanise, is an attorney who represented Plaintiff in Missouri, and is implicated in the bond order conditions and communication issues related to *Case No.*

*24SN-CROO843* and *24SN-CROO715*.

- o   Address for Service: The Law Offices of Dee Wampler & Joseph Passanise, 2974 E. Battlefield, Springfield, MO 65804

20. Defendant, Judge Matt Selby, is a Circuit Court Judge in Stone County, Missouri, involved in Plaintiff's legal proceedings, specifically *Case No. 24SN-CROO715*.

- o   Address for Service: 110 South Maple, Galena, MO 65656

21. Defendant, Judge Chavez, is a Circuit Court Judge in Stone County, Missouri, involved in Plaintiff's legal proceedings, specifically *Case No. 24SN-CROO843*.

- o   Address for Service: 110 South Maple, Galena, MO 65656

22. Defendant, John Jensen, is Plaintiff's father, a resident of Missouri, and is alleged to have engaged in actions contributing to Plaintiff's harm.

- o   Address for Service: 6 Arrowhead Rd, Kimberling City, MO 65686

23. Defendant, Mary Jensen, is Plaintiff's mother, a resident of Missouri, and is alleged to have engaged in actions contributing to Plaintiff's harm.

- o   Address for Service: 6 Arrowhead Rd, Kimberling City, MO 65686

24. Defendant, Jane Laura Doe, is an individual employed by Stone County Emergency Services as a dispatcher, acting under color of state law. Plaintiff encountered Defendant Jane Laura Doe during multiple phone calls on or around September 21, 2024, and October 4, 2024. Defendant Jane Laura Doe is sued in her official and individual capacities.

- o   Address for Service: Service would typically be made via Stone County Emergency Services (SCES): 110 South Maple, Galena, MO 65656.

25. Defendant, Deputy Scott Burdg, is a law enforcement officer employed by the Stone County Sheriff's Office, acting under color of state law. Deputy Burdg is the officer who

filed the criminal report (Case # L24-09455) against Plaintiff. Deputy Burdg is sued in his official and individual capacities.

- o Address for Service: Service would typically be made via Stone County Sheriff's Office: 110 South Maple, Galena, MO 65656.

26. Defendant, Cheryl Langdon, is an individual residing in Stone County, Kimberling City, Missouri. She is Plaintiff's aunt and initiated the 911 call that led to the events described herein.

- o Address for Service: Stone County, Kimberling City, Missouri (As her specific residential address is not publicly available, this general location is noted for the purpose of identifying her within the complaint's context, implying service would need to be effected through other means or discovery).

27. Defendant, Kimberling City, Missouri, is a municipality located in Stone County, Missouri, and is the employer of the individually named police officers. At all times relevant to this Complaint, the City acted through its agents, policies, customs, and practices.

- o Address for Service: 34 Kimberling Blvd, P.O. Box 370, Kimberling City, MO 65686

28. Defendant, Arizona Department of Economic Security / Division of Developmental Disabilities (DES/DDD), is a state agency responsible for administering public benefits and services, including those related to developmental disabilities, and for setting eligibility and diagnostic criteria for such services.

- o Address for Service: 1789 W Jefferson St, Phoenix, AZ 85007-4665

29. Defendant, American Psychiatric Association (APA), is a professional organization that publishes diagnostic criteria (e.g., DSM) and influences mental health treatment standards and practices.

- o Address for Service: 800 Maine Avenue S.W., Suite 900, Washington, DC 20024

30. Defendants, John/Jane Doe Officers/Employees, are other unnamed individuals employed by Defendants Stone County Emergency Services, Stone County Sheriff's Office, and/or Kimberling City Police Department, who participated in the discriminatory and retaliatory acts alleged herein, acting under color of state law. Their identities will be sought through discovery and this Complaint will be amended to include their names. These Defendants are sued in their official and individual capacities.

   o  Address for Service: Service would typically be made via their respective employers (e.g., Stone County Emergency Services, Stone County Sheriff's Office: 110 South Maple, Galena, MO 65656; Kimberling City Police Department: 34 Kimberling Blvd, P.O. Box 370, Kimberling City, MO 65686).

31. John Doe Defendants 1-10 are other state, federal, or local officials, employees, or entities, including those within the City of Tucson Unified School District, whose identities are not yet known, but who are responsible for the actions alleged herein.

## III. JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this case arises under the Constitution and laws of the United States, including the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and 42 U.S.C. § 1983.

33. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy as the federal claims.

34. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and (e), as a substantial part of the events or omissions giving rise to the claims occurred in this

district and Defendants reside or are found in this judicial district.

## IV. FACTUAL ALLEGATIONS

35. The U.S. Constitution guarantees a republican form of government, which relies on a population competent to understand, abide by, and oversee the laws passed by its representatives.

36. The State of Arizona, by regulating the practice of law through a bar license, has created an exclusive legal class. This action has effectively negated the utility of a common citizen to fully understand and engage with the law, thereby discouraging the populace from learning the law and participating in civic oversight.

37. This action creates a systemic barrier to the functional knowledge of law, leading to a system where an elite legal class, through its functional and mechanical understanding of law, effectively "overlords" the population. This insulates their actions from accountability, subverting the core function of a representative republic.

38. Concurrently, the Administrative Office of the U.S. Courts, through its PACER system, charges a fee of $0.10 per page for access to public court documents. This fee scheme has remained fixed for a decade, despite the exponential decrease in the operational costs of data storage and processing.

39. This cost barrier restricts and limits access to the vast datasets of legal documents and judicial work products. It prevents the development of competent and ethical AI systems, which could democratize legal knowledge and make it accessible to the common person, thereby restoring civic competence.

40. This denial of access to a public resource for a price that bears no relation to its cost constitutes a structural injustice that perpetuates the legal elite and denies citizens an

effective tool for redress.

41. The Commerce Clause of the U.S. Constitution has been used to justify a vast expansion of federal power, regulating activities far beyond the original intent of a limited government. This over-regulation has resulted in the creation of over 100,000 pages of federal law.

42. This expansion of federal power has not been met with a corresponding evolution in the standing requirements of Article III courts. The stringent standing requirements, originally designed to limit the judiciary's power in a limited government, now function to create a "dead-zone" where the federal government's actions cannot be challenged.

43. As a direct consequence, the U.S. Government can and does engage in unlawful behavior, such as promoting free trade policies that have removed American labor and manufacturing jobs, while simultaneously using the Federal Arbitration Act to conceal the true quality of corporate products.

44. The ADA, enacted pursuant to the Commerce Clause, obligates public entities to ensure equal access and to avoid discrimination on the basis of disability.

45. The Supreme Court in *Gonzales v. Raich, 545 U.S. 1 (2005)*, clarified that regulatory schemes invoked under the Commerce Clause must be enforceable and implemented to justify federal preemption.

46. During her tenure as Attorney General of Florida, Defendant Pamela Jo Bondi failed to implement, enforce, or advocate for a comprehensive regulatory framework (CFRs) addressing the treatment of mentally ill or disabled persons in state judicial systems.

47. No substantive ADA-compliant enforcement mechanism or procedural standards were enacted to protect disabled persons during legal proceedings or mental health evaluations.

48. Plaintiff and similarly situated individuals faced systemic exclusion, discrimination, and procedural bias due to this abdication of federal and state responsibility.

49. Defendant Bondi's abandonment of ADA enforcement constitutes a breach of duty and contributes directly to unlawful segregation and coercion of disabled persons under state authority.

50. A recent Executive Order, dated July 24, 2025, and titled, "ENDING CRIME AND DISORDER ON AMERICA'S STREETS," instructs the Attorney General to seek the reversal of judicial precedents that impede the civil commitment of individuals with mental illness who are living on the streets.

51. This order is an unconstitutional attempt to pervert the civil commitment process, expanding its scope to take "parental control" of adults without a home, an act primarily driven by poverty.

52. The order promotes the forced treatment of these individuals with drugs that cause documented and severe side effects, including metabolic, hormonal, and cognitive impairments, dopamine supersensitivity, hyperprolactinemia, and brain shrinking.

53. The government's promotion of these drugs is based on a flawed scientific understanding, as much of the data relies on a high placebo effect in trials and ignores the principle that correlation is not causation.

54. Plaintiff avers that this action is a fundamental subversion of the government's duty as a republic. By promoting the drugging and pacification of a population most directly impacted by its own failed policies, the government is negating the very forces that would otherwise enact change from within the system.

55. The core logical and operational process of the human brain cannot be rectified by injecting drugs that randomly blockade, antagonize, or otherwise affect brain receptors

in random neurons. The Executive Order's promotion of such treatments is based on a scientific fallacy and constitutes a form of malpractice against the system's core integrity.

56. The City of Tucson Unified School District administers a system that, through its socialistic structure, fails to educate students on the functional application of law to life. This results in a population that is ill-equipped to understand their civic duties.

57. As a direct consequence, the students, as future voters, are conditioned to vote for laws that are unenforceable or procedurally unsound, further eroding the integrity of the legal system and the competence of a self-governing people.

58. The school district's disciplinary system lacks an "administrative court" with a level of complexity fitting the grade, thereby denying students a fundamental education in due process, accountability, and the adversarial system.

59. The school district does not provide a mechanism for students to resolve civil claims and disputes with one another, a critical function of law, further hindering their education in practical legal principles and restorative justice.

60. Plaintiff alleges that the current system of mental health assistance systematically denies effective help unless an individual declares suicidal thoughts or homicidal tendencies. This forces individuals into a binary choice that does not reflect the full spectrum of mental health crises, such as autistic burnout. This failure by the state and federal government to enforce the ADA effectively places the burden of navigating an inaccessible system on the mentally ill and disabled, who are persons with the least ability, focus, money/resources, and public allegiance to receive cooperation. Therefore, the ADA, in its current application to mental health, remains underdeveloped and functionally ineffective.

61. This systemic failure is evident when Plaintiff, Jensen, experiences autistic burnout in situations he cannot manage, such as being assaulted and having all his stuff taken and his living situation "special exempted" by a landlord who claims fear after physically assaulting him, despite Jensen not responding violently. This constitutes a continuous pattern of discrimination, where such situations are then systematically used to demonstrate the person cannot function, thereby justifying the initiation of guardianship proceedings to treat the person as a child and remove their ability to make choices. State laws typically allow for civil commitment based on criteria such as being "dangerous to self or others" or "gravely disabled," meaning an "inability to provide for basic personal needs" like food, clothing, or shelter (e.g., Nevada Revised Statutes 433A.147-197, Alabama Code § 22-52-10.4, Alaska Statutes § 47.30.915(7)). The determination of "incapable of self-care" or "grave disability" is often left entirely to the subjective discretion of state agents, including law enforcement and healthcare providers, who assess observable behavior and perceived risk, leading to subjective and potentially discriminatory judgments that can initiate involuntary holds and commitment proceedings \cite{1.1, 1.2, 1.4, 1.7, 2.1, 2.5}.

62. As an example of this systemic failure, Plaintiff refers to the detailed allegations in *Case No. Cv-25-00464-TUC-JGZ*, where entities such as Days Inn, Texaco, and Northern Cochise Community Hospital systematically engaged in trespassing or neglect of Plaintiff Jensen for autistic burnout behavior, or even for simply sitting and talking while waiting to check into a hotel.

63. The lack of available beds and shelter in Willcox (as further detailed in *Case No. Cv-25-00464-TUC-JGZ*), coupled with the refusal of transport to an inpatient facility, effectively criminalized Plaintiff's burnout behavior, forcing him into dangerous and

unsupported situations, especially if he is without communications.

64. The prevailing belief within the system is that a person's mental health status allows parties to negate their contractual duties or other obligations, even when payment has been rendered. This creates a standard where individuals experiencing mental health crises cannot expect to receive due contractual obligations, and no one is assigned responsibility for the consequences of the choices made by those who operate within this scheme, without understanding the effects of this widely enforced system.

65. The system further demonstrates a profound flaw by refusing to intervene in mental health crises unless the intervention can be justified by a declaration of incompetence. Once such incompetence is declared or demonstrated, the system then uses this justification to remove the individual's ability to refuse drugs, participate in treatment, or exercise other fundamental rights. This is done while promoting drugs that disrupt the function of the brain and cause it brain damage, to "treat" the person but for the benefit of others, so the scale weight in risk analysis for the side effect on the patient's actual body is not given any reference and instead is substituted for the perceived safety people feel for enforcing drugs that make the condition worse.

66. This pattern aligns with the Executive Order's interest in promoting civil commitment, which can be seen as a mechanism to create destitution in order to justify state control over individuals through civil guardianship, thereby creating a pathway to a form of forced labor or "slavery" by way of legal precedent.

67. Plaintiff further incorporates by reference the allegations from a separate sealed civil case, Jason Adam Jensen v.SealedDefendants , Case No. CV-25-OO434-JGZ, which details specific instances of harassment, denial of functional mechanisms for mental health support, and the systemic use of situations to

justify guardianship and removal of autonomy, further illustrating the failures challenged herein.

68. Plaintiff incorporates by reference the detailed factual allegations from *Jason Adam Jensen v. State of Arizona, et al., Case No. Cv-25-00464-TUC-JGZ*, specifically regarding the systemic discrimination, civil rights violations, and harm suffered by Plaintiff due to the actions and inactions of various state, municipal, and private entities identified in that separate action. These allegations are fully incorporated as if set forth herein and serve as examples of the broader systemic issues challenged in this complaint.

## Allegations Related to Stone County, Missouri

69. Plaintiff, Jason Adam Jensen, has experienced systemic ADA grievances and obstruction of accommodations from the Stone County Circuit Court and related entities in Missouri, where he resided until March 2025.

70. Plaintiff sent multiple emails to Mechelee Lebow, Stone County Circuit Clerk, regarding ADA grievances and attempts to secure accommodations for his disability (autism) during court proceedings.

71. During scheduled meetings with Presiding Judge David Cole regarding ADA grievances (e.g., August 26, 2024; February 18, 2025; February 24, 2025), Plaintiff was denied the ability to record the meetings or bring his phone as an accommodation for his disability, with the Clerk stating meetings were not public and recording devices were not allowed. Plaintiff asserted these meetings should be public and recorded under the Sunshine Act and 42 U.S.C. § 12132.

72. The Stone County Sheriff's Office used physical force to remove Plaintiff from the premises when he attempted to enter the building with his phone, and unlawfully

removed notices he posted regarding the ADA and a plea not to re-elect certain Stone County officials.

73. Plaintiff was unwilling to go to Galena due to the Sheriff's Office behavior and refused to pick up a hearing CD until an ADA grievance with that agency could be successfully filed. Plaintiff attempted to file a complaint with the Stone County Sheriff's office through Mechelee Lebow, who referred him to her office for processing complaints.

74. Plaintiff also raised concerns with Stone County Emergency Services (SCES) regarding their compliance with ADA (28 CFR 35.107) and their obligation to establish a grievance procedure, emphasizing implied retaliation for his calls to seek compliance with federal law. He formally requested the specific form and process for filing an official ADA complaint and grievance with SCES.

75. These actions by Stone County entities, including the Circuit Court, Sheriff's Office, and Emergency Services, demonstrate a pattern of obstructing the enforcement of public policy and federal law, and denying Plaintiff his rights under the ADA and due process.

76. During his incarceration in Stone County Jail, Plaintiff experienced deliberate indifference to his serious medical needs, specifically an untreated condition of constipation, and was denied necessary autism accommodations by Stone County Jail Staff John Does. This denial of care occurred despite his visible distress and communication of his needs. Plaintiff had to seek emergency medical attention for constipation upon release.

77. Plaintiff further alleges that the court's actions in Stone County obstruct the enforcement of public policy and federal law, and allow the trial judge to set the court record, questioning the legitimacy of convictions. Plaintiff's experiences in Stone County exemplify how the legal system fails to accommodate disabled individuals and denies redress for systemic issues, including the lack of functional ADA compliance.

78. Plaintiff alleges that Defendant Michael Stanfield, an attorney licensed to practice in Missouri, who represented Plaintiff in *Missouri v. Jensen, Case #24SN-CR00843*, engaged in professional misconduct and discrimination against Plaintiff, his client, as detailed in Plaintiff's complaint to the Missouri Office of Chief Disciplinary Counsel (OCDC) on December 30, 2024.

79. Specifically, Defendant Stanfield negotiated bond conditions for Plaintiff that conceded Plaintiff's civil litigation rights in the Western District of Missouri by requiring mental health treatment, and allegedly failed to explain the waiver of Plaintiff's Fifth and Fourth Amendment rights as part of this bond order.

80. Defendant Stanfield allegedly required Plaintiff to expend huge sums of money for court-ordered residence, which then led to Plaintiff's arrest for "trespassing" when the residence closed, demonstrating a lack of reasonable accommodation for Plaintiff's disability.

81. Defendant Stanfield allegedly promoted disregard for the Court's time and encouraged Plaintiff to express himself with profanity while incarcerated, which Plaintiff asserts was a deliberate act of sabotage intended to cause Stringer Law LLC to perceive disrespect and withdraw from Plaintiff's cases.

82. Defendant Ben Stringer and Stringer Law LLC, despite advertising themselves as ADA Title I and Title III attorney specialists, allegedly refused to apply ADA accommodations to their client and dealings, and filed a motion to withdraw from Plaintiff's cases, thereby contributing to the perpetuation of an absurd and unconstitutional bond order.

83. Plaintiff alleges that Defendant Stanfield used his position as Plaintiff's counsel to "teach me a lesson" that Plaintiff does not know everything about law's outcomes, an outrageous violation of trust.

84. Plaintiff further alleges a fee dispute with Defendant Stanfield, asserting approximately $1300 was paid for one day of work of questionable quality, and disputes the accounting of his trust account.

85. Plaintiff alleges that the Office of Chief Disciplinary Counsel (Missouri) failed to adequately address the substance of Plaintiff's complaint against Defendant Michael Stanfield, by dismissing the matters as within the jurisdiction of the courts to resolve and refusing to review trial strategy or attorney advice. This inaction by OCDC perpetuates the systemic issues of lack of accountability within the legal profession.

86. Allegations regarding Bond Conditions as "Legal Expulsion" and Retaliation in Missouri (Case #24SN-CR00843):

a. Plaintiff alleges that the bond orders issued in Missouri (Case #24SN-CR00843) included unlawful and unconstitutional conditions regarding his residency and financial obligations. The initial order (December 10, 2024) mandated residence at a specific hotel in Branson West at an exorbitant rate (over 100% of Plaintiff's Social Security Disability income), which was financially unsustainable and constituted an undue financial hardship.

b. This hotel did not allow mail or legal residency, creating an impossible and inherently unlawful situation where Plaintiff could not fully comply with the spirit of the bond condition. This was a deliberate attempt to set Plaintiff up for failure.

c. The sequence of events—being forced into this unsustainable living situation, getting arrested for "trespassing" when the hotel closed (due to his inability to establish legal residency), and then being permitted to leave the state entirely (February 11, 2025 order)—constitutes a de facto legal expulsion or constructive banishment from the State of Missouri. This pattern suggests the system's actions, rather than genuinely ensuring

Plaintiff's appearance or public safety, effectively removed him from Missouri, violating his fundamental rights to travel and reside.

d. These bond conditions, the arrest, and the subsequent permission to leave the state were retaliatory actions against Plaintiff for exercising his ADA rights or were intended to coerce him into a particular outcome (e.g., accepting a plea deal that included mental health treatment, as alleged in his disciplinary complaint against Stanfield). This directly implicates 42 U.S.C. § 12203.

e. Defendant Wesley Weber, as the Prosecuting Attorney involved in Case #24SN-CR00843, was involved in negotiating or agreeing to these unlawful and discriminatory bond conditions. He was aware or should have been aware of Plaintiff's disability and the potential for these conditions to violate the ADA or lead to retaliation.

87. Allegations regarding Attorney Joseph S. Passanise and Presiding Judge David Cole (Missouri):

a. On February 24, 2025, Plaintiff received a call from Defendant Joseph S. Passanise, his attorney, who informed Plaintiff that Presiding Judge David Cole was "not happy" and had called Passanise as a "professional courtesy" due to Plaintiff's actions, including his attempts to secure ADA accommodations (e.g., for his glasses) and his continued contact with court officials (filing appeals, talking to the clerk).

b. Defendant Passanise, acting on behalf of or in concert with Defendant Presiding Judge David Cole, explicitly demanded that Plaintiff "stop practicing law and listen to your goddamn lawyer," "stop filing appeals," "stop taking on the clerk," and "stop being difficult with these people," asserting that these actions were "not helping me in your criminal cases."

c. Defendant Passanise warned Plaintiff that he was "about to get yourself a forced

guardianship which is going to get you forced locked up" if he did not comply with Passanise's directives to cease his ADA-related advocacy and communications with the court. This constitutes an attempt to coerce Plaintiff into abandoning his constitutional and ADA rights under threat of involuntary commitment and guardianship.

d. Defendant Passanise presented an ultimatum, stating, "If you're the captain, I'm getting out. I cannot represent somebody that is not listening to me," thereby attempting to force Plaintiff to relinquish control over his own case and his right to advocate for his disability accommodations.

e. Despite Plaintiff's clear confusion and insistence that a docket sheet for the "715 case" did not indicate he was excused from appearing, Defendant Passanise dismissed Plaintiff's concerns and accused him of "manufacturing facts," demonstrating a breach of trust and a failure to adequately represent Plaintiff's interests regarding his court appearances and ADA accommodations.

f. The actions of Defendant Presiding Judge David Cole, through his communication with Defendant Passanise, and Defendant Passanise's subsequent demands to Plaintiff, constitute an attempt to intimidate, coerce, and retaliate against Plaintiff for exercising his rights under the ADA (specifically concerning his glasses accommodation) and his First Amendment right to petition the government for redress of grievances, in violation of 42 U.S.C. § 12203.

g. On August 19, 2025, at 5:58 AM Arizona time, Plaintiff received a voicemail from Defendant Joseph S. Passanise (to phone number 402-598-1285). In this voicemail, Defendant Passanise acknowledged receiving Plaintiff's "somewhat purse email and calls, all of that yesterday about how how you're filing a lawsuit if I don't do something. It's not going to be dismissed today. That's not what's gonna happen. I'm still trying to

work out the deferred contract. Obviously, I want it dismissed, and I've kept you from having to come back. If you are wanting to file a lawsuit and go to war, that's 180 degrees opposite than what I want to do as your attorney. So I'm continuing it today, and then I need to set a call up with you because I I if you're not gonna do what I say in the sense of how we handle this, then I don't need to be your lawyer anymore. So I don't advise filing a lawsuit. Quite frankly, I don't understand why you care. You were going west or going down to Puerto Rico, and I'm not understanding why you wanna pick a fight. That's just not in your best interest. So I'm just telling you what's gonna happen today. And, if that's gonna cause you to file a lawsuit, well, then I'm gonna withdraw. So I will I look forward to scheduling a call with you. We can do it over the weekend, and I'll talk to you later. Thank you very much. Bye." Following this voicemail, Defendant Passanise never answered Plaintiff's calls, demonstrating a complete abandonment of his professional duties and a clear act of retaliation for Plaintiff's intent to pursue litigation.

88. Allegations regarding Judge Matt Selby (Missouri Case No. 24SN-CR00715):

a. In Case No. 24SN-CR00715, Presiding Judge Matt Selby sustained Attorney Ben Stringer's motion to withdraw over Plaintiff's objection that he required a Title II ADA attorney.

b. Judge Selby obstructed Plaintiff's attempt to incorporate ADA accommodations into the court record and preserve the lack of effective counsel on a misuse of 911 charge, where Plaintiff alleges he never called 911.

c. Judge Selby's actions allowed Plaintiff's lawyer to withdraw, thereby failing to preserve Plaintiff's ADA rights and effectively denying Plaintiff effective counsel, despite Plaintiff's explicit objections and requests for ADA-compliant representation.

d. Judge Selby's rulings regarding the recording of hearings and discovery procedures

further obstructed Plaintiff's ability to document and advocate for his ADA rights.

e. These actions constitute a violation of Plaintiff's rights under the ADA (42 U.S.C. §
12132) and 42 U.S.C. § 12203 (retaliation/interference), and a denial of due process under
the Fourteenth Amendment.

89. Allegations regarding Judge Chavez (Missouri Case No. 24SN-CR00843):

a. On the same day as Judge Selby's actions (January 21, 2025), Judge Chavez, in Case
No. 24SN-CR00843, similarly allowed Attorney Ben Stringer to withdraw, thereby failing
to preserve Plaintiff's ADA rights and denying effective counsel, contributing to the
systemic pattern of obstructing ADA accommodations.

b. Judge Chavez's actions, in concert with other judicial officers, contributed to the
systemic pattern of obstructing ADA accommodations and denying Plaintiff the ability to
have his wishes regarding legal representation and disability needs honored.

c. These actions constitute a violation of Plaintiff's rights under the ADA (42 U.S.C. §
12132) and 42 U.S.C. § 12203 (retaliation/interference), and a denial of due process under
the Fourteenth Amendment.

90. Allegations regarding John Jensen and Mary Jensen (Parents):

a. Defendants John Jensen and Mary Jensen, Plaintiff's parents, allegedly engaged in a
pattern of harassment and interference with Plaintiff's autonomy and medical decisions.

b. They allegedly forced Plaintiff into a car against his will for a mental evaluation, which
Plaintiff asserts constituted assault and a Class 4 level assault for isolating him and
taking his communication device. Plaintiff states he filed police reports regarding this.

c. They allegedly asserted a bipolar diagnosis over Plaintiff's self-identified autism,
preferring a diagnosis that justifies drug intervention.

d. They allegedly called police on Plaintiff based on his legal decisions (refusing a plea

deal), leading to police intervention that undermined his autonomy and right to set boundaries. Plaintiff asserts that each time he attempted to set boundaries, his parents would "throw a fit," leading to police intervention that reinforced the idea that his boundaries were not valid.

e. They allegedly contributed to Plaintiff's homelessness by orchestrating his removal from the residence without proper legal process, despite his contributions to the household.

f. Their actions, in concert with state actors, allegedly contributed to the systemic criminalization of Plaintiff's autistic burnout and mental health conditions.

91. Allegations from the Missouri-focused ADA Complaint (Original Complaint):

a. Plaintiff is an individual with disabilities, specifically Autism and Bipolar Disorder, which impact his communication, emotional regulation, and ability to navigate complex, non-systematized processes.

b. Defendants (State of Missouri, Stone County, Stone County Emergency Services, Kimberling City, Jane Laura Doe, Wesley Weber, Deputy Scott Burdg, and John/Jane Doe Officers/Employees), as public entities, are required by Title II of the ADA (42 U.S.C. § 12132) to ensure no qualified individual with a disability is excluded from or discriminated against in their services, programs, or activities, including providing reasonable accommodations and accessible grievance procedures (28 C.F.R. § 35.107, § 35.108).

c. Beginning on or about September 2, 2024, and continuing through October 2024, Plaintiff repeatedly attempted to contact various Defendants, including Stone County Emergency Services, Stone County Sheriff's Office, and Kimberling City Police Department, to request ADA accommodations and to initiate a grievance process regarding their services and policies.

d. Plaintiff's requests stemmed from a need to pre-plan potential interactions with law enforcement and emergency services due to his disabilities, specifically concerning mental health holds (often referred to as "96-hour holds" or "Baker Act"). Plaintiff sought a defined, systematic process for requesting accommodations and filing grievances.

e. Defendants, and their employees, repeatedly denied Plaintiff's requests for ADA accommodations and grievance processes, directing him to other agencies, hanging up on him, or claiming they were exempt from ADA requirements due to their size or status as a "third-party entity."

f. On or about September 2, 2024, Plaintiff made approximately 150 calls to Stone County Emergency Services over a four-hour period, attempting to secure ADA accommodations. These calls allegedly tied up dispatch lines and hindered emergency response.

g. On or about September 21, 2024, Plaintiff again made numerous calls (18 calls totaling 147 minutes) to Stone County Emergency Services, continuing his attempts to obtain ADA accommodations and a grievance process.

h. During a phone call on September 21, 2024, with Defendant Jane Laura Doe (a dispatcher at SCES), Plaintiff stated, "Give me a fucking ADA grievance form. I'll fill it out and shove it up your ass."

i. Defendant Jane Laura Doe immediately interpreted this statement as a "threat of sexual assault" and claimed to be in "fear" from original transcript. Plaintiff contends this was an insult born of frustration due to repeated denials and was not a literal threat of violence, especially given the physical impossibility of the act described and the context of the conversation.

j. Despite Plaintiff's explanation that the statement was an insult and not a threat, and

that he was frustrated by the lack of an ADA process, Defendant Jane Laura Doe and other Defendants allegedly used this statement as a pretext to initiate criminal charges against Plaintiff.

k. On September 21, 2024, Defendant Deputy Scott Burdg filed a Supplemental Narrative Report (Case # L24-09455) alleging that Plaintiff committed "Harassment - 1st Degree" and "Misuse of emergency telephone service" based on the aforementioned phone calls and the "shove it up your ass" statement.

l. Plaintiff alleges that the filing of these criminal charges was an act of retaliation and intimidation, intended to discourage him from continuing to demand his ADA rights and to punish him for doing so, in violation of 42 U.S.C. § 12203.

m. Plaintiff further alleges that Defendants, including Stone County Emergency Services and Kimberling City Police Department, actively engaged in a pattern of "deliberate indifference" by:

i. Repeatedly refusing to provide a clear ADA grievance process or forms.

ii. Blocking Plaintiff's phone number, forcing him to call through intermediaries.

iii. Directing Plaintiff to external agencies (e.g., State Highway Patrol, Attorney General, ADA.gov) that lacked jurisdiction or ability to resolve his specific ADA accommodation requests with the primary agencies.

iv. Allegedly "red flagging" Plaintiff's address in their system as "autistic" without providing formal confirmation or explanation, despite Plaintiff's request for such.

v. Demonstrating a lack of training and understanding of ADA requirements among their personnel, as evidenced by statements like "we don't do federal law" or "that's not part of my job."

vi. Engaging in dismissive and unprofessional behavior, including a supervisor answering

the phone as a "pizza parlor" and others accusing Plaintiff of "schizophrenia" or "mental health breakdown" when he expressed frustration.

vii. Dispatching police officers to Plaintiff's parents' residence without providing adequate notice or documentation of the purpose, allegedly to intimidate Plaintiff or his family.

n. Plaintiff asserts that the volume of his calls was a direct and necessary consequence of Defendants' repeated denials and obstruction of his legitimate ADA requests, and was an attempt to document their non-compliance.

92. Allegations regarding Kimberling City, Missouri, and Police Officers (Patterns and Practices):

a. Plaintiff is an individual with disabilities, specifically Autism and Bipolar Disorder, which impact his communication, emotional regulation, and ability to navigate complex, non-systematized processes.

b. Plaintiff was a resident and tenant of 6 Arrowhead Road, Kimberling City, Missouri, at the time of the events described herein.

c. Leading up to the events of November 30, 2024, Plaintiff was subjected to harassment by John and Mary Jensen for three days, including complaints about his eating habits.

d. On November 29, 2024, Plaintiff called the fire department due to concerns about his parents stating he was having issues sleeping.

e. On November 30, 2024, John and Mary Jensen attempted to force Plaintiff from his residence at 6 Arrowhead Road, Kimberling City, Missouri, to transport him to a hospital against his will, without a court order.

f. During this attempt, Plaintiff was physically grabbed, manipulated, and controlled by John and Mary Jensen. Plaintiff's car and phone were taken by John and Mary Jensen, effectively isolating Plaintiff.

g. John and Mary Jensen stopped at the Kimberling City Police Department, where Officer L. Walker interacted with Plaintiff and his parents. Officer Walker did not find enough evidence to initiate a 96-hour hold on Plaintiff, and it was clear at that time that Plaintiff was not a danger to himself or others.

h. Despite the lack of probable cause for a hold, John and Mary Jensen, without a court order and without understanding Plaintiff's actual condition (Autism, not Bipolar), continued their attempts to force Plaintiff to a hospital.

i. Instead of taking Plaintiff to a hospital, John and Mary Jensen allegedly abandoned Plaintiff at a Zaxby's restaurant.

j. Later on November 30, 2024, Defendant Cheryl Langdon, allegedly in concert with John and Mary Jensen, concocted a false story and set up Plaintiff to be arrested.

k. Defendant Cheryl Langdon called 911, falsely reporting that Plaintiff was "going crazy," "starting to hit my brother," "swinging," "punching him," and "pushed me across the room." She further falsely claimed Plaintiff was "mentally disabled" in a manner implying dangerousness, and that he had a "criminal record."

l. During the 911 call, Cheryl Langdon stated she "walks with a cane" and was 70 years old, exaggerating her vulnerability and the extent of any physical contact.

m. In reality, Plaintiff merely moved Cheryl Langdon from his path after she approached him, blocked his way, and punched him in the chest. Plaintiff suffered injuries, but these were not documented by police. Cheryl Langdon sustained no injuries, nor did she fall, despite her claims.

n. Kimberling City Police Officers, including Officer A. Boillot (Badge No. 905) and Officer L. Walker (Badge No. 909), were dispatched to 6 Arrowhead Road.

o. Upon arrival, officers separated Plaintiff from his parents and aunt. Officer L. Walker

noted that Plaintiff had no shirt on and was becoming agitated by his parents' statements.

p. Officers conversed separately with Plaintiff and his family members. The second officer allegedly picked small pieces of what was said between Plaintiff and the first officer, and formulated probable cause based on these partial statements, while ignoring Plaintiff's reports of assault by his family.

q. Officers, including Officer A. Boillot, prepared a Statement of Probable Cause, falsely alleging that Plaintiff committed Domestic Assault 4th Degree based on the fabricated claims of Cheryl Langdon and mischaracterizations of John and Mary Jensen.

r. Officer A. Boillot's probable cause statement falsely claimed that Plaintiff was "yelling at," "pushing," "throwing around," and "trying to hit" family members, and that Plaintiff was "visibly upset" and that the situation "just started being physical today." These statements were based on the false narratives provided by Cheryl, John, and Mary Jensen.

s. Officer A. Boillot requested a warrant for Plaintiff's arrest, falsely asserting that Plaintiff was a "danger to the public" and a "danger to the alleged victim" because he "becomes agitated and fights with his family when things do not go his way. He lashes out in anger, both verbally and physically." This statement was discriminatory and lacked factual basis, relying on stereotypes about mental health.

t. Despite Plaintiff's clear statements that he was fine and did not need to go to the hospital, Officer A. Boillot informed Plaintiff he was going to jail for Domestic Assault.

u. Plaintiff briefly jerked away in frustration and was immediately arrested.

v. The police officers, including Officer A. Boillot and Officer L. Walker, aided and abetted John and Mary Jensen in their efforts to physically grab, manipulate, and control Plaintiff

outside of the law, by failing to properly investigate Plaintiff's claims of assault and by acting upon the false and discriminatory statements of Cheryl, John, and Mary Jensen.

w. Plaintiff was subsequently booked into Stone County Jail under Case No. 24SN-CR00843 for Domestic Assault 4th Degree.

x. Plaintiff's parents, John and Mary Jensen, later sent emails to the Prosecuting Attorney requesting dismissal of the charges, admitting that John was pushing Plaintiff and that Cheryl and Mary misunderstood the situation, further demonstrating the falsity of the initial claims. Mary Jensen also stated that she does not think Jason would hurt anyone physically and that he was cooperative with the police.

y. This malicious prosecution was initiated and continued with the intent to force Plaintiff into unwanted medical treatment, rather than based on legitimate probable cause, and constituted discrimination based on Plaintiff's perceived disability.

z. As a pattern and practice of Kimberling City, Missouri's discrimination, under the leadership of its Chief of Police, Todd Lemoine, officers previously involved in Plaintiff's involuntary commitment in 2012, such as Officer Onthouse and Officer Shepard (whose individual claims are now barred by the statute of limitations but whose actions demonstrate systemic issues), based their actions on similar false or exaggerated claims. For example, Officer Onthouse's affidavit claimed Plaintiff was "extremely mentally unstable," "made several comments that did not make any sense," and was "talking to 'GOOGLE'," and relied on Plaintiff's father's statements about suicidal comments. Officer Shepard's affidavit claimed Plaintiff "BECAME VIOLENT TOWARD PARENTS. THROWING ITEMS IN THE HOME AND BREAKING ITEMS. SUBJECT REFUSE LAW ENFORCEMENTS COMMAANDS AND RESISTED ARREST." These claims were used to justify involuntary commitment and reflect a pattern of discrimination based on perceived mental disability

within the Kimberling City Police Department.

aa. Defendant Kimberling City, Missouri, through its police department and its leadership, has a custom or policy of failing to adequately train, supervise, or discipline its officers regarding proper investigation of domestic disputes involving individuals with perceived disabilities, leading to discriminatory arrests and malicious prosecution to force medical treatment.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(Violation of the Republican Form of Government Clause - Article IV, Section 4)

93. Plaintiff incorporates by reference the factual allegations contained in paragraphs 33-38 and 40-42 as if fully set forth herein.

94. The State of Arizona, by its bar licensing laws, and the Administrative Office of the U.S. Courts, through its PACER fee structure, have together created a "legal elite" and a knowledge barrier that has rendered the general population unable to effectively participate in or oversee their own government.

95. This systemic disenfranchisement violates the guarantee of a republican form of government by creating a system where the electorate cannot hold its representatives accountable for the laws they pass, thereby subverting the will of the people.

96. This claim is brought against Defendants State of Arizona and the Administrative Office of the United States Courts.

### SECOND CAUSE OF ACTION

(Due Process and Equal Protection Violations - Fifth and Fourteenth Amendments)

97. Plaintiff incorporates by reference the factual allegations contained in paragraphs 41-46 as if fully set forth herein.

98. The Executive Order's promotion of civil commitment and forced drugging of the homeless and mentally ill population, driven by poverty, is a direct violation of due process and equal protection.

99. The government's action imposes a harmful and unscientific treatment regime, leading to severe physical and cognitive impairments, on a specific, vulnerable class of individuals, without the justification of a compelling state interest and in violation of their fundamental rights to liberty and bodily autonomy.

100.   This claim is brought against Defendant Attorney General Pamela Jo Bondi, in her official capacity.

## THIRD CAUSE OF ACTION

(Denial of Access to Courts and Redress of Grievances - First and Fifth Amendments)

101.   Plaintiff incorporates by reference the factual allegations contained in paragraphs 39-42 as if fully set forth herein.

102.   The expansive use of the Commerce Clause, coupled with the restrictive standing requirements of Article III courts, creates a structural dead-zone where the government operates without the possibility of a legal challenge, thereby denying citizens a path to redress of grievances.

103.   This claim is brought against all Defendants as the alleged actions and inactions are systemic in nature and require a unified constitutional analysis.

## FOURTH CAUSE OF ACTION

(Violation of the Republican Form of Government Clause and Denial of Due Process - Article

IV, Section 4 and Fourteenth Amendment)

104.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 47-50 as if fully set forth herein.

105.    The City of Tucson Unified School District's administrative and disciplinary structure, through its failure to provide an education in the functional application of law and a forum for dispute resolution, has systemically disenfranchised students and future voters.

106.    This failure to educate the populace in basic legal principles and due process is a violation of the constitutional guarantee of a republican form of government and constitutes a denial of due process under the Fourteenth Amendment.

107.    This claim is brought against Defendant City of Tucson Unified School District.

## FIFTH CAUSE OF ACTION

(Violation of the Americans with Disabilities Act and Due Process - 42 U.S.C. § 12101 et seq. and Fourteenth Amendment)

108.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 51-64 as if fully set forth herein. Plaintiff further incorporates by reference the specific examples of systemic failures and harm from *Case No. Cv-25-00464-TUC-JGZ*, as generally described in paragraphs 54-55 and fully incorporated in paragraph 61.

109.    Defendant Attorney General Pamela Jo Bondi, in her official capacity, by failing to uphold and enforce the Americans with Disabilities Act (ADA) against systemic discrimination, allows and perpetuates the denial of reasonable accommodations and the criminalization of disability-related behavior.

110.    The systemic failures of mental health assistance, which deny effective help unless

individuals declare suicidal thoughts or homicidal tendencies, and the subsequent criminalization of autistic burnout behavior (as exemplified by events in *Case No. Cv-25-00464-TUC-JGZ* and further detailed in *Case No. CV-25-00434-JGZ*), demonstrate that the ADA is a "dead letter" for individuals with mental health disabilities due to a lack of functional mechanisms for its enforcement.

111.    The prevailing system, which negates contractual obligations based on mental health status and refuses intervention unless an individual is deemed incompetent, constitutes a denial of due process and discriminatory practice against individuals with mental health disabilities. This system, in conjunction with the Executive Order's promotion of civil commitment, effectively creates a pathway for civil guardianship and potential forced labor, violating the fundamental rights of individuals with disabilities.

112.    This claim is brought against Defendant Attorney General Pamela Jo Bondi, in her official capacity.

## SIXTH CAUSE OF ACTION

(Failure to Enforce Federal Law - Violation of 42 U.S.C. § 12132)

113.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 42-47 as if fully set forth herein.

114.    Defendant Attorney General Pamela Jo Bondi, through her past and present actions, failed to administer or ensure ADA protections in public judicial functions, in violation of federal mandates.

115.    This claim is brought against Defendant Attorney General Pamela Jo Bondi, in her official capacity.

## SEVENTH CAUSE OF ACTION

(Commerce Clause Violation - Unconstitutional Application of 42 U.S.C. § 12101 et seq.)

116.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 42-47 as if fully set forth herein.

117.    Defendant Attorney General Pamela Jo Bondi, through her past and present actions, relied on the ADA for federal power but has failed to establish or enforce any corresponding enforcement mechanism, rendering 42 U.S.C. § 12101 et seq. unconstitutional under Commerce Clause authority, as interpreted in *Gonzales v. Raich, 545 U.S. 1 (2005)*, because a regulatory scheme invoked under the Commerce Clause must be enforceable and implemented to justify federal preemption.

118.    This claim is brought against Defendant Attorney General Pamela Jo Bondi, in her official capacity.

## EIGHTH CAUSE OF ACTION

(Violation of the Republican Form of Government Clause - Mental Health Scheme as Martial Law)

119.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 3, 4, 47-55 as if fully set forth herein.

120.    The state mental health scheme, exemplified by Florida's Baker Act and Missouri's mental health statutes, and its focus on "dangerousness" and "incapability of self-care" as the primary means to obtain help, operates as a form of martial law against mentally ill persons. This scheme allows for arbitrary detention by non-medical personnel on minimal evidence, a standard of deprivation of liberty not applied to any other class of persons.

121.    This system is inherently arbitrary and discriminatory: it denies individuals like Plaintiff Jensen access to patient-directed care (e.g., help without drugs, group therapy) even

when he is in crisis due to external circumstances (e.g., assault, homelessness caused by disability), while paradoxically forcing intervention (e.g., detention, mislabeling, removal of autonomy) when he is stable and has a plan.

122.    This lack of patient-directed support, coupled with the criminalization of mental health conditions and the isolation of alleged "criminal" behaviors to specific moments of crisis, systematically causes homelessness and makes it increasingly difficult for mentally ill individuals to obtain and retain stable living arrangements.

123.    This scheme, which makes mental illness a basis for arbitrary detention and removal of autonomy, constitutes an unconstitutional application of power that subverts the fundamental principles of a republican form of government, where no class of citizens should be subject to such a broad and arbitrary suspension of rights.

124.    This claim is brought against Defendants State of Arizona and Attorney General Pamela Jo Bondi, in her official capacity.

## NINTH CAUSE OF ACTION

(Professional Misconduct and Discrimination by Legal Counsel - ADA Violations)

125.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 76-83 as if fully set forth herein.

126.    Defendant Michael Stanfield, despite holding himself out as an ADA lawyer, engaged in professional misconduct and discrimination against Plaintiff, his client, by negotiating bond conditions that conceded Plaintiff's civil litigation rights, failed to explain the waiver of constitutional rights, and allegedly promoted actions that sabotaged Plaintiff's attorney-client relationship.

127.    Defendant Ben Stringer and Stringer Law LLC, despite advertising themselves as ADA

Title I and Title III attorney specialists, allegedly refused to apply ADA accommodations to their client and dealings, and filed a motion to withdraw from Plaintiff's cases, thereby contributing to the perpetuation of an absurd and unconstitutional bond order.

128.    These actions, by attorneys holding themselves out as ADA specialists, constitute a breach of professional duties and discriminatory practices under the ADA, contributing to the systemic denial of rights for disabled individuals within the legal system.

129.    This claim is brought against Defendants Michael Stanfield, Ben Stringer, and Stringer Law LLC.

## TENTH CAUSE OF ACTION

(Denial of Due Process and Failure to Uphold Professional Standards - Office of Chief Disciplinary Counsel)

130.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 83 as if fully set forth herein.

131.    Defendant Office of Chief Disciplinary Counsel (Missouri) failed to adequately address the substance of Plaintiff's complaint against Defendant Michael Stanfield, by dismissing the matters as within the jurisdiction of the courts to resolve and refusing to review trial strategy or attorney advice.

132.    This inaction by OCDC constitutes a denial of due process for Plaintiff seeking redress for professional misconduct and perpetuates a systemic lack of accountability within the legal profession, thereby contributing to the broader systemic issues challenged in this complaint.

133.    This claim is brought against Defendant Office of Chief Disciplinary Counsel (Missouri).

## ELEVENTH CAUSE OF ACTION

(Civil Rights Violations - 42 U.S.C. § 1983 - Deliberate Indifference and Denial of Accommodation)

134.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 74-75 as if fully set forth herein.

135.    Defendant Stone County, Missouri, and Stone County Jail Staff John Does, acting under color of state law, subjected Plaintiff to a deprivation of his rights, privileges, or immunities secured by the Constitution and laws, including but not limited to his rights under the Eighth and Fourteenth Amendments.

136.    Specifically, Stone County Jail Staff John Does exhibited deliberate indifference to Plaintiff's serious medical needs (untreated constipation) and denied reasonable accommodations for his autism while he was incarcerated, despite his visible distress and communication of his needs. This constitutes cruel and unusual punishment and discrimination based on disability.

137.    This claim is brought against Defendants Stone County, Missouri, and Stone County Jail Staff John Does.

## TWELFTH CAUSE OF ACTION

(ADA Violations and Denial of Due Process - Stone County Entities)

138.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 68-74 as if fully set forth herein.

139.    Defendant Stone County, Missouri, through its Circuit Court, Sheriff's Office, and Emergency Services (SCES), engaged in discriminatory practices and denied Plaintiff due process by:

a. Refusing to provide reasonable accommodations for Plaintiff's disability (e.g., denying recording of ADA grievance meetings, denying phone access as an accommodation).

b. Obstructing access to courts and grievance procedures (e.g., physical force by Sheriff's Office, unlawful removal of notices, refusal to process ADA complaints).

c. Failing to comply with ADA requirements (28 CFR 35.107) and the Sunshine Act regarding public meetings and grievance procedures.

140.    These actions collectively demonstrate a systemic failure to uphold federal law and constitute discrimination on the basis of disability and a denial of due process under the Fourteenth Amendment.

141.    This claim is brought against Defendant Stone County, Missouri.

## THIRTEENTH CAUSE OF ACTION

(Retaliation and Coercion - 42 U.S.C. § 12203 - Wesley Weber)

142.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 84 as if fully set forth herein.

143.    Defendant Wesley Weber, as the Prosecuting Attorney for Stone County, Missouri, was involved in negotiating or agreeing to bond conditions (*Case #24SN-CR00843*) that were unlawful and unconstitutional, including financially unsustainable residency requirements and conditions that prevented Plaintiff from establishing legal residency.

144.    The sequence of events—imposition of these conditions, Plaintiff's subsequent arrest for "trespassing" due to the inability to establish legal residency, and then being permitted to leave the state—constitutes a de facto legal expulsion or constructive banishment from the State of Missouri.

145.    These actions were intended to retaliate against Plaintiff for exercising his ADA rights

or to coerce him into a particular outcome (e.g., accepting a plea deal that included mental health treatment).

146.    This claim is brought against Defendant Wesley Weber.

## FOURTEENTH CAUSE OF ACTION

(Breach of Fiduciary Duty / Professional Misconduct - Joseph S. Passanise)

147.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 85 as if fully set forth herein.

148.    Defendant Joseph S. Passanise, as Plaintiff's attorney, owed Plaintiff a fiduciary duty of loyalty, competence, and zealous advocacy. Defendant Passanise entered an appearance in criminal court for Plaintiff in *Missouri v. Jensen, Case #24SN-CROO843* and *24SN-CROO715*, thereby establishing an attorney-client relationship for these matters.

149.    Defendant Passanise breached this duty by attempting to coerce Plaintiff into abandoning his constitutional and ADA rights advocacy, prioritizing the perceived favor of the court (Presiding Judge David Cole) over Plaintiff's best interests and autonomy, and by creating an ultimatum that threatened to withdraw representation if Plaintiff did not comply with demands to cease legitimate legal activities related to his disability accommodations.

150.    Defendant Passanise's actions, including dismissing Plaintiff's concerns about court appearances and accusing him of "manufacturing facts," demonstrate a breach of trust and a failure to adequately represent Plaintiff's interests regarding his court appearances and ADA accommodations.

151.    This claim is brought against Defendant Joseph S. Passanise.

## FIFTEENTH CAUSE OF ACTION

(ADA Violations / Retaliation - 42 U.S.C. § 12203 - Presiding Judge David Cole & Joseph S. Passanise)

152.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 85 as if fully set forth herein.

153.    Defendant Presiding Judge David Cole, through his communications with Defendant Joseph S. Passanise, and Defendant Passanise's subsequent demands to Plaintiff, engaged in actions intended to intimidate, coerce, and retaliate against Plaintiff for exercising his rights under the ADA (specifically concerning his glasses accommodation) and his First Amendment right to petition the government for redress of grievances.

154.    These actions constitute a violation of 42 U.S.C. § 12203, which prohibits retaliation or interference with an individual's exercise of rights under the ADA.

155.    This claim is brought against Defendants Presiding Judge David Cole and Joseph S. Passanise.

## SIXTEENTH CAUSE OF ACTION

(ADA Violations / Obstruction / Denial of Effective Counsel - Judge Matt Selby)

156.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 87 as if fully set forth herein.

157.    Defendant Judge Matt Selby, in *Case No. 24SN-CR00715*, sustained Attorney Ben Stringer's motion to withdraw over Plaintiff's objection that he required a Title II ADA attorney, thereby obstructing Plaintiff's attempt to incorporate ADA accommodations and denying effective counsel.

158.    Judge Selby's actions, including rulings regarding recording of hearings and

discovery, further obstructed Plaintiff's ability to document and advocate for his ADA rights, and constituted a violation of Plaintiff's rights under the ADA (42 U.S.C. § 12132) and 42 U.S.C. § 12203 (retaliation/interference), and a denial of due process under the Fourteenth Amendment.

159.    This claim is brought against Defendant Judge Matt Selby.

## SEVENTEENTH CAUSE OF ACTION

(ADA Violations / Obstruction / Denial of Effective Counsel – Judge Chavez)

160.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 88 as if fully set forth herein.

161.    Defendant Judge Chavez, in *Case No. 24SN-CR00843*, similarly allowed Attorney Ben Stringer to withdraw, thereby failing to preserve Plaintiff's ADA rights and denying effective counsel, contributing to the systemic pattern of obstructing ADA accommodations.

162.    These actions constitute a violation of Plaintiff's rights under the ADA (42 U.S.C. § 12132) and 42 U.S.C. § 12203 (retaliation/interference), and a denial of due process under the Fourteenth Amendment.

163.    This claim is brought against Defendant Judge Chavez.

## EIGHTEENTH CAUSE OF ACTION

(Unlawful Eviction / Harassment / Interference with Medical Decisions - John Jensen & Mary Jensen)

164.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 89 as if fully set forth herein.

165.    Defendants John Jensen and Mary Jensen allegedly engaged in a pattern of unlawful

eviction, harassment, and interference with Plaintiff's medical decisions and autonomy.

166.    Their actions, including forcing Plaintiff into a car against his will for a mental evaluation (which Plaintiff asserts constituted assault), asserting a bipolar diagnosis over his self-identified autism, calling police based on his legal decisions, and undermining his ability to set boundaries, resulted in his unlawful removal from his residence and contributed to his homelessness and the systemic criminalization of his mental health condition.

167.    This claim is brought against Defendants John Jensen and Mary Jensen.

## NINETEENTH CAUSE OF ACTION

(Discrimination Under the Americans with Disabilities Act (ADA) - 42 U.S.C. § 12132 - Kimberling City & Officers)

168.    Plaintiff incorporates by reference all preceding paragraphs, particularly paragraphs 90-91 as if fully set forth herein.

169.    Plaintiff is an individual with a disability as defined by the ADA, 42 U.S.C. § 12102.

170.    Defendants Kimberling City, Missouri, Officer A. Boillot, Officer L. Walker, and John/Jane Doe Officers/Employees, acting individually and in concert, discriminated against Plaintiff on the basis of his actual or perceived disability by:

a. Failing to conduct a proper and unbiased investigation into the domestic dispute, relying instead on discriminatory stereotypes about individuals with perceived mental disabilities.

b. Aiding and abetting John and Mary Jensen in their efforts to physically control and manipulate Plaintiff, and to isolate him by taking his phone, all based on discriminatory assumptions about his disability.

c. Effectuating an unlawful arrest and detention based on Plaintiff's perceived disability rather than actual criminal conduct.

d. Maintaining policies, customs, or failures to train and supervise officers regarding proper investigation of domestic disputes involving individuals with perceived disabilities, leading to discriminatory arrests and malicious prosecution to force medical treatment.

171.    As a direct and proximate result of Defendants' discriminatory actions, Plaintiff suffered damages, including but not limited to, unlawful arrest, detention, emotional distress, damage to reputation, and deprivation of liberty.

172.    This claim is brought against Defendants Kimberling City, Missouri, Officer A. Boillot, Officer L. Walker, and John/Jane Doe Officers/Employees.

## TWENTIETH CAUSE OF ACTION

(Malicious Prosecution - Kimberling City & Officers)

173.    Plaintiff incorporates by reference all preceding paragraphs, particularly paragraphs 90-91 as if fully set forth herein.

174.    Defendants Officer A. Boillot and Officer L. Walker initiated criminal proceedings against Plaintiff (*Case No. 24SN-CR00843*) by formulating false probable cause statements and effecting an unlawful arrest.

175.    As a pattern and practice of Kimberling City's discrimination (whose individual claims are now barred by the statute of limitations but whose actions demonstrate systemic issues), officers previously involved in Plaintiff's involuntary commitment in 2012, such as Officer Onthouse and Officer Shepard, initiated prior involuntary commitment proceedings against Plaintiff based on false or exaggerated affidavits.

176.    These proceedings were initiated and continued without probable cause and with

malice, intending to cause harm to Plaintiff by forcing him into unwanted medical treatment and depriving him of his liberty and rights.

177.    The criminal proceedings and involuntary commitment attempts terminated in favor of Plaintiff (or are expected to).

178.    As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered damages, including but not limited to, unlawful arrest, detention, loss of liberty, emotional distress, damage to reputation, and legal expenses.

179.    Defendant Kimberling City, Missouri, is liable for malicious prosecution due to its policies, customs, or failures to train and supervise its police officers, which led to the malicious prosecution of Plaintiff.

180.    This claim is brought against Defendants Officer A. Boillot, Officer L. Walker, Kimberling City, Missouri, and John/Jane Doe Officers/Employees.

## TWENTY-FIRST CAUSE OF ACTION

(Assault and Battery - Cheryl Langdon)

181.    Plaintiff incorporates by reference all preceding paragraphs, particularly paragraphs 90-91 as if fully set forth herein.

182.    On November 30, 2024, Defendant Cheryl Langdon intentionally made physical contact with Plaintiff by approaching him, blocking his way, and punching him in the chest.

183.    This contact was offensive and harmful, and was made without Plaintiff's consent.

184.    As a direct and proximate result of Defendant Cheryl Langdon's assault and battery, Plaintiff suffered physical and emotional injuries, pain, suffering, and distress.

185.    This claim is brought against Defendant Cheryl Langdon.

## TWENTY-SECOND CAUSE OF ACTION

(False Statements / Defamation - Cheryl Langdon)

186.   Plaintiff incorporates by reference all preceding paragraphs, particularly paragraphs 90-91 as if fully set forth herein.

187.   On November 30, 2024, Defendant Cheryl Langdon made false and defamatory statements about Plaintiff to the 911 dispatcher, including that Plaintiff was "going crazy," "starting to hit my brother," "swinging," "punching him," and "pushed me across the room." She further falsely claimed Plaintiff was "mentally disabled" in a manner implying dangerousness, and that he had a "criminal record."

188.   These statements were false, as Plaintiff merely moved Cheryl Langdon from his path after she initiated physical contact, and Plaintiff caused no injuries to her.

189.   Defendant Cheryl Langdon published these statements to the 911 dispatcher and, by extension, to law enforcement, knowing them to be false or with reckless disregard for their truth.

190.   These false statements caused harm to Plaintiff's reputation, led to his unlawful arrest and detention, and subjected him to public scorn and ridicule.

191.   As a direct and proximate result of Defendant Cheryl Langdon's false statements, Plaintiff suffered damages, including but not limited to, unlawful arrest, loss of liberty, emotional distress, and damage to reputation.

192.   This claim is brought against Defendant Cheryl Langdon.

## TWENTY-THIRD CAUSE OF ACTION

(Civil Rights Violations - 42 U.S.C. § 1983 - Kimberling City & Officers)

193.   Plaintiff incorporates by reference all preceding paragraphs, particularly paragraphs

90-91 as if fully set forth herein.

194.    At all times relevant to this Complaint, Defendants Officer A. Boillot, Officer L. Walker, and John/Jane Doe Officers/Employees were acting under color of state law as law enforcement officers.

195.    Defendants deprived Plaintiff of his rights, privileges, or immunities secured by the Constitution and laws of the United States, including but not limited to:

a. The right to liberty and freedom from unlawful seizure and detention, as guaranteed by the Fourth and Fourteenth Amendments.

b. The right to due process of law, as guaranteed by the Fifth and Fourteenth Amendments, by subjecting him to malicious prosecution and forced medical treatment without legal justification.

c. The right to equal protection under the law, as guaranteed by the Fourteenth Amendment, by discriminating against him based on his perceived disability.

196.    Defendants Officer A. Boillot and Officer L. Walker aided and abetted John and Mary Jensen in removing Plaintiff's rights and standing by allowing them to physically grab, manipulate, and control Plaintiff outside of law, and by failing to intervene in these unlawful acts while acting under color of state law.

197.    Defendant Kimberling City, Missouri, is liable under 42 U.S.C. § 1983 because the deprivation of Plaintiff's rights resulted from a policy or custom of the City, or from a failure to train or supervise its officers that amounted to deliberate indifference to Plaintiff's constitutional rights.

198.    As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including but not limited to, unlawful arrest, detention, loss of liberty, emotional distress, damage to reputation, and legal expenses.

199.    This claim is brought against Defendants Officer A. Boillot, Officer L. Walker, Kimberling City, Missouri, and John/Jane Doe Officers/Employees.

## TWENTY-FOURTH CAUSE OF ACTION

(Supervisory Liability - 42 U.S.C. § 1983 - Kimberling City & Todd Lemoine's Policy)

200.    Plaintiff incorporates by reference all preceding paragraphs, particularly paragraph 91.z and 91.aa as if fully set forth herein.

201.    Defendant Kimberling City, Missouri, through its police department and its leadership, including its Chief of Police, Todd Lemoine, has a custom or policy of failing to adequately train, supervise, or discipline its officers regarding proper investigation of domestic disputes involving individuals with perceived disabilities, leading to discriminatory arrests and malicious prosecution to force medical treatment.

202.    This policy, set and annunciated by Chief Todd Lemoine, exhibited deliberate indifference to Plaintiff's constitutional rights and ADA protections by maintaining or failing to correct policies and customs that led to the discriminatory arrests, malicious prosecution, and forced medical treatment of individuals with perceived disabilities, as exemplified by the actions of officers under his command (including Officers A. Boillot, L. Walker, Onthouse, and Shepard).

203.    This failure to adequately train, supervise, or discipline its officers amounted to deliberate indifference to the rights of individuals like Plaintiff, thereby contributing to the deprivation of Plaintiff's constitutional and statutory rights.

204.    This claim is brought against Defendant Kimberling City, Missouri.

## TWENTY-FIFTH CAUSE OF ACTION

(Discrimination Based on Condition as 'Race' under 42 U.S.C. § 1983)

205.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 3, 4, 56-63, 65-66, 75-76, 83, 87-94 as if fully set forth herein.

206.    Plaintiff asserts that conditions such as autism and bipolar disorder, due to their complex etiology encompassing environmental, family, and genetic factors, constitute a distinct group or class that should be legally recognized as a "race" for the purposes of anti-discrimination law under 42 U.S.C. § 1983.

207.    Discrimination against individuals based on these conditions, as exemplified throughout this complaint, should therefore carry monetary penalties akin to those for race discrimination.

208.    Unlike physical disabilities, where accommodations often empower individuals and facilitate integration, the prevailing approach to mental health conditions frequently aims to contain individuals within institutions or control their autonomy, rather than empowering them. This disparate treatment, which seeks to control rather than accommodate, constitutes a form of systemic discrimination based on this asserted "race."

209.    The Americans with Disabilities Act (ADA), as applied to mental health, is rendered ineffective and a "dead letter" due to a systemic lack of enforcement money and incentives, further exacerbating this discrimination and failing to provide adequate redress for the "race" of individuals with these conditions.

210.    This claim is brought against all Defendants who have engaged in discriminatory practices or systemic failures related to mental health and disability, as alleged throughout this complaint.

## TWENTY-SIXTH CAUSE OF ACTION

(Discrimination by Diagnostic Limitations and Misdiagnosis - ADA and Equal Protection)

211.   Plaintiff incorporates by reference the factual allegations contained in paragraphs 28-29 and 51-53 as if fully set forth herein.

212.   Defendant Arizona Department of Economic Security / Division of Developmental Disabilities (DES/DDD), by requiring and limiting what level of mental health professional can diagnose autism and ADHD, creates a systemwide unlawful modification of the mental health system.

213.   This practice legally restricts other qualified professionals from issuing these diagnoses, thereby promoting misdiagnosis (e.g., bipolar over autism) in emergency psychiatric situations.

214.   This system, based on economic incentives, skews the rates and outcomes of diagnosis by limiting who can make which diagnosis without ensuring that during emergency psychiatric situations, all persons have access to a doctor who can diagnose all mental health disorders.

215.   Only certain diagnoses (e.g., autism) receive "special help" and treatment, incorporating an element of discrimination into the entire process, while others (e.g., bipolar) do not, despite their complex needs.

216.   This constitutes systematic discrimination against individuals based on their mental health condition, violating the ADA and the Equal Protection Clause of the Fourteenth Amendment.

217.   This claim is brought against Defendant Arizona Department of Economic Security / Division of Developmental Disabilities.

**TWENTY-SEVENTH CAUSE OF ACTION**

(Violation of First Amendment - Establishment Clause and Free Exercise Clause - American Psychiatric Association as Established Religion)

218.    Plaintiff incorporates by reference the factual allegations contained in paragraphs 28-29 and 51-53 as if fully set forth herein.

219.    Plaintiff asserts that the American Psychiatric Association (APA), through its publication of diagnostic criteria (e.g., DSM) and its influence on state mental health laws and practices (including in Missouri and Arizona), functions as an established religion that has merged with the state.

220.    This "mental health cabal" overrides the accused/patient's individual religion and supposes that individuals cannot have a religion superior to its entrenched doctrines.

221.    By enforcing specific diagnoses, such as the "bipolar" diagnosis (which Plaintiff alleges has the lowest requirements to diagnose, is the most expedient, offers the least amount of help, and carries a special disdain in society), the system effectively picks and chooses who they will "grace," all subjectively.

222.    This entire system, lacking objective testing processes (e.g., blood, X-rays, MRIs, scans) and relying solely on a doctor's opinion, operates on a faith-based model that violates the Establishment Clause of the First Amendment by establishing a state-sanctioned religion of mental health.

223.    Furthermore, this system violates Plaintiff's (and others') Free Exercise Clause rights by imposing a dominant "mental health religion" that infringes upon his personal beliefs and autonomy regarding his own condition and treatment.

224.    This claim is brought against Defendants American Psychiatric Association, State of Missouri, and State of Arizona.

**TWENTY-EIGHTH CAUSE OF ACTION**

(Obstruction of ADA Claims and Due Process - Negligence and Violation of Ethics)

225.  Plaintiff incorporates by reference the factual allegations contained in paragraphs 84-85, and 87.e-g, as if fully set forth herein.

226.  The Deferred Prosecution Agreement (DPA) entered into in *Missouri v. Jensen, Case No. 24SN-CROO715*, contains a condition that a licensed attorney must handle all non-emergency contact with the Stone County Circuit Clerk's Office.

227.  This unwritten condition, while seemingly procedural, creates a direct and discriminatory barrier to Plaintiff's ability to file and prosecute a pro se civil action in federal court, as such actions require non-emergency contact with the clerk's office.

228.  Defendant Joseph S. Passanise, as Plaintiff's legal counsel, had a duty to inform and advise Plaintiff of this unwritten and consequential aspect of the DPA and its impact on his civil litigation rights, particularly those related to the ADA. His alleged failure to do so constitutes negligence and a breach of his professional and ethical duties.

229.  Defendant Wesley Weber, as the Prosecuting Attorney, was a party to and negotiated the terms of this DPA. He was aware, or should have been aware, that the inclusion of this specific condition would have the direct effect of obstructing Plaintiff's ability to seek redress for ADA-related grievances against the very entities named in the agreement. This action constitutes an intentional and wrongful obstruction of the ADA.

230.  These combined actions constitute a violation of the ADA, negligence, and a violation of professional ethics, serving to deny Plaintiff his fundamental right to access the courts and to seek redress for ADA discrimination.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Adam Jensen respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants, granting the following relief:

a) A declaration that the State of Arizona's mental health laws, as applied, and the Executive Order's civil commitment provisions, are unconstitutional as they violate due process, equal protection, and the ADA.

b) A declaration that 42 U.S.C. § 12101 et seq. (the ADA) is unconstitutional as applied, due to the lack of corresponding enforcement mechanisms as alleged herein.

c) A permanent injunction prohibiting the application of "dangerousness" or "incapable of self-care" criteria in a manner that denies actual care or forces guardianship without strict due process and patient autonomy.

d) A permanent injunction requiring the State of Arizona and Attorney General Pamela Jo Bondi to establish functional mechanisms for ADA enforcement in mental health contexts, prioritizing patient-centered support and reasonable accommodations, not just crisis intervention or forced commitment.

e) A permanent injunction prohibiting the use of mental health status to negate tenancy rights or contractual obligations, as exemplified by the actions in Case No. Cv-25-00464-TUC-JGZ.

f) An order requiring all Defendants to acknowledge and be held responsible for the consequences of forced "treatment" and any resulting brain damage or other adverse effects caused by the widely enforced scheme of disrupting brain function.

g) Declaratory relief that Plaintiff Jason Adam Jensen, due to his condition, has the right to check himself into any inpatient facility without being forced to take drugs.

h) Injunctive relief mandating that any ambulance must transport Plaintiff Jason Adam Jensen to a facility of his choice for care related to his condition, especially if he is without communications.

i) Injunctive relief mandating that any police officer must assist Plaintiff Jason Adam Jensen in accessing care for his condition, including transport to a facility of his choice, especially if he is without communications.

j) A declaration that the actions of Defendants Michael Stanfield, Ben Stringer, and Stringer Law LLC, as alleged herein, constitute professional misconduct and discrimination under the ADA.

k) A declaration that the actions of Defendant Office of Chief Disciplinary Counsel (Missouri), as alleged herein, constitute a denial of due process and a failure to uphold professional standards.

l) A declaration that the actions of Stone County, Missouri, and Stone County Jail Staff John Does, as alleged herein, constitute civil rights violations under 42 U.S.C. § 1983 and ADA violations.

m) A declaration that the actions of Defendant Wesley Weber, as alleged herein, constitute retaliation and coercion under 42 U.S.C. § 12203.

n) A declaration that the actions of Defendants Presiding Judge David Cole and Joseph S. Passanise, as alleged herein, constitute a breach of fiduciary duty/professional misconduct and violations of 42 U.S.C. § 12203.

o) A declaration that the actions of Defendants Judge Matt Selby and Judge Chavez, as alleged herein, constitute ADA violations, obstruction, and denial of effective counsel.

p) A declaration that the actions of Defendants John Jensen and Mary Jensen, as alleged herein, constitute unlawful eviction, harassment, and interference with medical decisions.

q) A declaration that the actions of Defendants Cheryl Langdon, Officer A. Boillot, Officer L. Walker, and Kimberling City, Missouri, as alleged herein, constitute discrimination under the Americans with Disabilities Act (ADA).

r) A declaration that the actions of Defendants Officer A. Boillot, Officer L. Walker, and Kimberling City, Missouri, as alleged herein, constitute malicious prosecution.

s) A declaration that the actions of Defendant Cheryl Langdon, as alleged herein, constitute assault and battery.

t) A declaration that the actions of Defendant Cheryl Langdon, as alleged herein, constitute false statements and defamation.

u) A declaration that the actions of Defendants Officer A. Boillot, Officer L. Walker, and Kimberling City, Missouri, as alleged herein, constitute civil rights violations under 42 U.S.C. § 1983.

v) A declaration that the actions of Defendant Kimberling City, Missouri, as alleged herein, constitute supervisory liability under 42 U.S.C. § 1983.

w) A declaration that the actions of Defendants State of Missouri, Stone County, Stone County Emergency Services, Jane Laura Doe, Deputy Scott Burdg, and John/Jane Doe Officers/Employees, as alleged herein, constitute violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12132).

x) A declaration that the actions of Defendants State of Missouri, Stone County, Stone County Emergency Services, Jane Laura Doe, Wesley Weber, Deputy Scott Burdg, and John/Jane Doe Officers/Employees, as alleged herein, constitute retaliation and intimidation in violation of 42 U.S.C. § 12203.

y) A declaration that the actions of Defendant Arizona Department of Economic Security / Division of Developmental Disabilities, as alleged herein, constitute systematic discrimination based on diagnostic limitations and misdiagnosis, violating the ADA and Equal Protection.

z) A declaration that the actions of Defendants American Psychiatric Association, State of Missouri, and State of Arizona, as alleged herein, constitute a violation of the First

Amendment's Establishment Clause and Free Exercise Clause by establishing a state-sanctioned religion of mental health that infringes on individual religious freedom and promotes discriminatory practices.

aa) Monetary penalties and damages for discrimination based on Plaintiff's condition, asserted as a 'race' under 42 U.S.C. § 1983, as alleged herein.

bb) A declaration that the actions of Defendants Joseph S. Passanise and Wesley Weber, as alleged herein, constitute a negligent and unethical obstruction of the Americans with Disabilities Act (ADA) and a denial of due process.

cc) Such other and further relief as this Court deems just and proper.

DATED: September 16, 2025


Respectfully submitted,

/s/ Jason Adam Jensen
Jason Adam Jensen, Pro Se
919 N Stone Ave #5305
Tucson, AZ 85705
jasonajensen@gmail.com
402-598-1285

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I, Jason Adam Jensen, certify that Artificial Intelligence was used in the preparation of this document. I have reviewed and verified the accuracy and appropriateness of the AI-generated content and take full responsibility for it as if it were my own work, in accordance with FRCP 11 and all applicable Local Rules. This system is designed to take evidence uploaded, statements made, and claims alleged to draft a legal document on point

based on the regulatory documents for universal access to the law.

This document was drafted or prepared with the assistance of the District of Arizona Playground system operating under a framework with a functional description located at https://github.com/TemperedEnterprises/DistrictOfArizonaAIRegulatory. The use of this system to draft this document is grounded in my own instructions and intent.

Respectfully submitted,

/s/ Jason Adam Jensen
Jason Adam Jensen, Pro Se